**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES, et al., | |
| Plaintiffs, | Case No. 2:73-cv-26 |
| v. | HONORABLE PAUL L. MALONEY |
| STATE OF MICHIGAN, et al., | |
| Defendants. | |

---

**PLAINTIFF-INTERVENOR SAULT STE. MARIE TRIBE OF CHIPPEWA INDIANS BRIEF IN SUPPORT OF MOTION TO RECONSIDER OF ORDER INDEFINITELY EXTENDING THE 2000 GREAT LAKES FISHING CONSENT DECREE**

**Oral Argument Requested**

---

**INTRODUCTION**

The Sault Ste. Marie Tribe of Chippewa Indians ("Sault Tribe") asks this Court to reconsider its November 14, 2022 Order Extending the 2000 Great Lakes Fishing Consent Decree ("Order"), ECF No. 2027, and to hold that in the current context, the Court cannot extend the Consent Decree because the Sault Tribe did not consent to the indefinite extension.

The fact that the Sault Tribe did not agree to an additional extension of the August 8, Consent Decree, ECF No. 1485 ("Consent Decree") creates multiple related legal grounds for the conclusion that the Court cannot extend the Consent Decree as to the Sault Tribe.  First, no legal authority permits the Court to bind the Sault Tribe—a sovereign government—to an extension of

the Consent Decree over the Tribe's objection.  Second, extending a consent decree in the absence of a party's non-compliance with the consent decree is unprecedented.  Third, an indefinite extension of the Consent Decree is contrary to the clear and unambiguous term-limit expiration of the Consent Decree, and as such, the extension vitiates the contractual agreement that formed the basis of the Consent Decree.  Even assuming, *arguendo*, that the Court could amend the Consent Decree by extending the Decree indefinitely—an assumption the Sault Tribe disputes—the Movants' bare-bones motion to indefinitely extend the Consent Decree did not meet the rigorous standard that courts impose for even far less drastic modifications to an existing consent decree. Accordingly, the Court should reconsider as to the Sault Tribe, and order that the Sault Tribe is no longer subject to a "consent decree" to which it does not consent.

## BACKGROUND

Since August 2022, the Sault Tribe has been excluded from the ongoing consent decree negotiations.  On Friday, November 11, 2022, in compliance with Western District of Michigan Local Rule 7.1(d), counsel for Sault Tribe contacted the other parties to this case by email to seek their concurrence with a Motion to Enforce Great Lakes Fishing Consent Decree, specifically to enforce the expiration provision of the Consent Decree with respect to Sault Tribe.  ECF No. 2033. Sault Tribe's counsel requested a response by the following Monday at noon Eastern Time. Rasmussen Declaration.

On Monday, November 14, 2022, at 11:07 a.m. Eastern Time, the Bay Mills Indian Community, Little River Band of Ottawa Indians, Little Traverse Bay Bands of Odawa Indians, Grand Traverse Band of Ottawa and Chippewa Indians, the United States, and the State of Michigan (collectively, the "Movants") filed a Motion and Memorandum to Extend the Great Lakes Fishing Consent Decree ("Motion to Extend"), and did so without first conferring with the Sault Tribe as required by LCivR 7.1(d).  ECF No. 2025.  The Movants advised the Court that

Sault Tribe planned to file a Motion to Enforce Great Lakes Fishing Consent Decree.  *Id.* at PageID.12014.

Barely three hours later, the Court granted the Movant's Motion to Extend and extended the Consent Decree indefinitely, until "all objections to a proposed successor decree have been adjudicated."  ECF No. 2027, PageID.12022.  The Court did so without affording Sault Tribe any opportunity to respond to the Movant's Motion to Extend or to first file its Motion to Enforce Great Lakes Fishing Consent Decree, which the Movant's Motion indicated Sault Tribe intended to file.  ECF No. 2025, PageID.12014. [1]

## ARGUMENT

The extension of a consent decree without the consent of all parties is a signal event that is not permitted in the current case.  In fact, extension of a "consent decree" without a party's consent is only permitted in scenarios which are vastly different from the current case.  Because the Court in this case disregarded this well-established process and the applicable legal standard, Sault Tribe seeks reconsideration and alteration or amendment of the Court's Order under Western District of Michigan Local Civil Rule 7.4 and Rule 59(e) of the Federal Rules of Civil Procedure.

Local Civil Rule 7.4(a) permits reconsideration when the movant demonstrates a "palpable defect by which the court and the parties have been misled," and shows "that a different disposition of the case must result from a correction thereof."  It is an opportunity for a trial court to correct its own error before an appeal.

Rule 59(e) permits a motion to alter or amend a judgment to be filed no later than 28 days after entry of the judgment.  In the Sixth Circuit, courts may reconsider a judgment under Rule

---

[1] The Sault Tribe continued with its planned filing of its Motion to Enforce Great Lakes Fishing Consent Decree ("Motion to Enforce") and brief in support thereof.  ECF No. 2028, 2029.  The Tribe is filing a notice withdrawing the motion.

59(e) when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) *a need to correct a clear error or prevent manifest injustice*.  *E.g.*, *Louisville/Jefferson Co. Metro Gov. v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (emphasis added).

For the reasons discussed below, Sault Tribe meets both standards.

## I.    THE EXPIRATION OF THE CONSENT DECREE WAS EXPECTED, AND CANNOT BE THE BASIS FOR EXTENSION WITHOUT CONSENT.

Modification of a consent decree without the consent of all parties is a "signal event that requires a material change in circumstances that only a formal hearing and appropriate findings of fact can demonstrate."  *United States v. Wayne Cty.*, 95 Fed.Appx. 809 (6th Cir. 2004).  And, "[e]ven if a court has the power to modify or enforce compliance with a consent decree, it must support its issuance of such an order with specific findings of fact."  *Holland v. N.J. Dep't of Corrections*, 246 F.3d 267, 284 (3rd Cir. 2001); s*ee also Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994)); *cf. Heath v. DeCourcy*, 992 F.2d 630, 635 (6th Cir. 1993) (where a consent decree contained conditions precedent to termination, the district court cannot terminate the consent decree without a hearing and record showing that the conditions precedent have been met).

The Consent Decree, with agreed extensions, was set to expire about 22 years and three months after it was entered.  The fact that those 22 years and three months had elapsed is not a change in circumstances.  Instead, it was the expected and agreed upon term.  Here, the Sault Tribe and other parties agreed to compromise on issues for a set period of time.  They did not agree to give up their legal position or to compromise on those issues after that time period had expired. The other parties to this case have chosen not to seek consent of the Sault Tribe moving forward, and the known consequence is that the parties return to the position they occupied before August

8, 2000.  This Court therefore did not have before it a claim of change of circumstances, not did it issue findings or conclusions that there had been the requisite change in circumstances.[2]

An indefinite extension of the Consent Decree purportedly binding Sault Tribe without its consent is indeed a signal event.  It is not an extension of a consent decree—it is the imposition, without hearing or record, of a contested order depriving the Sault Tribe of its treaty rights!  Making such a significant modification of the Consent Decree—indefinitely extending its term over a sovereign government's objection and depriving that sovereign of its treaty rights—is wholly improper.

## II. NEITHER THE MOVANTS NOR THE COURT MET THE STANDARD TO EXTEND THE CONSENT DECREE.

Even if one assumed, *arguendo*, that reaching the end date of a consent decree could create an unexpected "material change," Movants did not even attempt to meet their burden to show the other elements for their requested extraordinary remedy of imposing a "consent decree" on a non-consenting party.  First, they would have to show that a significant change in circumstances warrants revision of the Consent Decree.  *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992).  For example, (1) changed factual conditions make compliance with the decree substantially more onerous; (2) the decree proves to be unworkable because of unforeseen circumstances; or (3) enforcement of the decree without modification would be detrimental to the public interest.  *Id*. at 384.

If, and only if, the Movants first meet that standard, then the Court would have had to determine whether the proposed modification is suitably tailored to the changed circumstances.  *Id*. at 383.  Modifications should generally only be granted for genuinely unanticipated changes in

---

[2] The Sault Tribe expects to also file a motion in the near future based on this Court no longer having a case or controversy regarding the Sault Tribe's exercise of its treaty rights.

circumstances.  *Id*. at 385.  A court should not rewrite the consent decree merely for the convenience of a party.  *Id*. at 391; *East Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 465 (6th Cir. 2011).  Modification of a consent decree is an "extraordinary remedy that should not be undertaken lightly."  *Id*. (quoting *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1147 (6th Cir. 1997) (Jones, J., concurring)).  This is especially true "where the design is not to relieve a party of obligations but to impose new responsibilities."  *Juan F. v. Weicker*, 37 F.3d 874, 878 (2d Cir. 1994) (quoting *Walker v. HUD*, 912 F.2d 819, 826 (5th Cir. 1990)).  "A contrary rule would discourage compromise for fear of adverse judicial modification."  *Id*.

Here, the Movants' Motion to Extend does not allege any significant change in circumstances warranting extension of the Consent Decree (nor does Sault Tribe believe that any exists).  Their Motion fails on that basis alone.  Having alleged no change in circumstances whatsoever, naturally the Movants do not discuss at all whether the extension is suitably tailored to any such changed circumstances.  Their Motion fails on that basis as well.  The Movants did not even bother to attempt to meet the relevant standard, so their Motion should have been denied.

The Court's Order must be reconsidered and altered or amended accordingly

## III.   AN INDEFINITE EXTENSION OF THE CONSENT DECREE WREAKS HAVOC ON THE PARTIES' BARGAIN, WHICH IS CONTRARY TO ESTABLISHED LAW.

The parties did not agree to be forever subject to the Consent Decree framework.  Their specific bargain was, in fact, ***not*** to be bound by the terms of the Consent Decree after 20 years had passed.  ECF No. 1458, PageID.3335 ("The Decree shall expire on the twentieth (20th) anniversary of its entry….  Upon expiration of this Decree, or if earlier terminated for any reason, the provisions, restrictions, and conditions contained in it shall no longer govern the parties in any manner.").  The agreed-upon expiration provision of the Consent Decree is clear and unambiguous.

6

An indefinite extension of the Consent Decree dramatically changes that bargain, in violation of clear law to the contrary.

In *Northeast Ohio Coalition for the Homeless v. Husted*, the plaintiffs sought to extend a consent decree, with a definite expiration date, pertaining to voting rights.  2017 WL 1531811 *2 (S.D. Ohio 2017).  The defendants opposed the motion.  *Id*.  The court agreed with the defendants that the *extension would "fundamentally alter the parties' bargain"—the defendants "had entered into the Consent Decree with the understanding that they would not be bound permanently*."  *Id*. at *10-11.  The court stated that it "must recognize the bargain struck by the parties."  *Id*. "Extending a Consent Decree from three, to seven, to fifteen years ***wreaks havoc*** on that bargain…"  *Id*. (emphasis added).  Accordingly, the court found that the extension was not warranted by significant changed circumstances and declined to further extend the consent decree. *Id*. at *11-12.

Similarly, in *E.E.O.C. v. Local 40*, the Second Circuit considered whether a district court had jurisdiction over a motion to enforce a consent decree which provided by its terms that it "shall expire three (3) years from the date of entry hereof."  76 F.3d 76, 78-79 (2d Cir. 1996).  The consent decree had already expired.  *Id*.  The Second Circuit found that the expiration provision was unambiguous, *id*. at 80, and accordingly reversed the district court's order asserting jurisdiction pursuant to the expired consent decree, explaining:

> If we were to enforce this consent decree against Local 40 twelve years after its expiration, ***we would be depriving the union of the benefit of its bargain***….*In exchange for [] concessions, the union received a concession from the plaintiffs— that the order would only be enforceable against Local 40 for three years*, unless the EEOC were able to convince the district court that a modification was necessary.

76 F.3d at 81 (emphasis added).

As in those cases, Sault Tribe's bargain with the other parties was that Sault Tribe would be subject to the Consent Decree for a term of 20 years, and no more.  Given the significant restrictions that the Consent Decree imposes on Sault Tribe's treaty rights, the expiration provision is a key component of that bargain—Sault Tribe did not agree to these restrictions permanently or indefinitely.  An indefinite extension of the Consent Decree wreaks havoc on that bargain and deprives Sault Tribe of the benefit of its bargain.

IV.   **AN INDEFINITE EXTENSION WITHOUT THE CONSENT OF ALL PARTIES, AND ABSENT A LACK OF COMPLIANCE WITH THE CONSENT DECREE, IS CONTRARY TO ALL PRIOR CASES.**

The indefinite extension of the Consent Decree without the consent of all parties is unprecedented.  After a thorough search, Sault Tribe has not located any cases in which a federal court extended a consent decree, without the consent of all parties, except where there had been a substantial lack of compliance—often even egregious non-compliance-- with a consent decree in institutional reform cases.  Even in that context, courts tailor the extension to the demonstrated lack of compliance.

For example, in *Vanguards of Cleveland v. City of Cleveland*, the goal of a consent decree was to eliminate past discrimination in hiring and promotional practices.  The consent decree set specific hiring goals, which were to be met by November 1987.  23 F.3d. 1013, 1016 (6th Cir. 1994).  However, the pass rates on promotional examinations in 1984 and 1985 were lower than expected.  *Id*. at 1020.  When it became clear the hiring goals would not be met by November 1987, the Vanguards moved to extend the consent decree.  *Id*.  The Sixth Circuit affirmed the extension of the consent decree for two years, noting that the extension was for a "relatively short period of time," and that it "operates along the lines of the consent decree," by effectively compensating for the two years when the exam pass rates were lower than expected.  *Id*.

Similarly, in *Thompson v. United States Department of Housing & Urban Development*, a decree required certain defendants to make available 911 public housing units by the expiration date.  404 F.3d 821, 824-25 (4th Cir. 2005).  However, they only supplied ***eight*** of the required units.  *Id*.  The district court accordingly extended its jurisdiction.  The Fourth Circuit concluded that the extension was suitably tailored to the problems created by the defendants' lack of compliance, because the district court extended its jurisdiction only until such time as HUD shows that its obligations have been fulfilled.  *Id*. at 831-32, 834.

Finally, in *David C. v. Leavitt*, a consent decree to address allegations of federal constitutional and statutory violations in the operation of Utah's child welfare system was to expire by its terms four years after its approval by the district court.  242 F.3d 1206, 1207-08 (10th Cir. 2001).  At the end of the four-year period, Utah was ***80% out of compliance*** with the terms of the decree.  *Id*. at 1208, 1212.  The Tenth Circuit upheld the district court's extension of the consent decree, stating that the extension would "allow Utah to fulfill the very obligations it voluntarily undertook when it entered into the Agreement."  *Id*. at 1211-12.

Numerous other examples exist.  But this case is fundamentally different from any of these examples.  Here, as discussed below, Sault Tribe was never in violation of any law.  Rather, it was the State of Michigan that had to be restrained from interfering with Sault Tribe's treaty fishing rights. *United States v. Michigan*, 471 F.Supp. 192, 203 (W.D. Mich. 1979).  The Consent Decree imposed no specific, measurable goals that had to be achieved by the expiration date.  And the Movants do not suggest that Sault Tribe is out of compliance with the terms of the Consent Decree as a general matter, or in a fashion that the indefinite extension will remedy.  Therefore, there is no reason to extend the Consent Decree for lack of compliance, and it is unprecedented to extend it ***without*** lack of compliance.

V.    THE CONSENT DECREE IS NO LONGER VALID OR BINDING ON THE SAULT TRIBE.

"The Constitution trumps a consent decree." *Cleveland Firefighters for Fair Hiring Practices v. City of Cleveland*, 669 F.3d. 737, 742 (6th Cir. 2012).  And the Constitution provides that treaties are "the supreme Law of the Land."  U.S. Const. art. VI, § 2.  The Consent Decree imposed significant restrictions on Sault Tribe's treaty rights for more than 20 years.  That is no longer appropriate.

A.    THE CONSENT DECREE DOES NOT REMEDY ANY VIOLATION OF FEDERAL LAW.

"Consent decrees are not entitlements.  Instead, a decree may remain in force only as long as it continues to remedy a violation of federal law." *John B. v. Emkes*, 710 F.3d 394, 398 (6th Cir. 2013).  A court must determine "whether ongoing enforcement of the original order [is] supported by an ongoing violation of federal law." *Id*. at 413 (quoting *Horne v. Flores*, 557 U.S. 433, 450 (2009)). *See also Cleveland Firefighters*, 669 F.3d at 742 ("And thus the core issue to be resolved in this litigation is whether, 31 years out, the decree's racial classifications continue to remedy past discrimination by the Fire Department.").  Decrees "exceed appropriate limits if they are aimed at eliminating a condition that does not violate [federal law] or does not flow from such a violation." *Horne*, 557 U.S. at 450 (quoting *Milliken v. Bradley*, 433 U.S. 267, 282 (1977)). "Federal courts may not order… governments, over their objection, to undertake a course of conduct not tailored to curing a constitutional violation that has been adjudicated." *Rufo*, 502 U.S. at 389.  In *Lorain NAACP v. Lorain Bd. of Ed.*, the Sixth Circuit found that the district court had abused its discretion by increasing a state's financial obligations under a consent decree in the absence of any finding of violation of the plaintiff's rights, stating:

> We hold that a district court may not, in the name of modification, circumvent the express terms of a defendant party's consent in the absence of an adjudicated or admitted violation of law.  In the absence of an adjudication or admission of constitutional violation, the district court's authority to impose additional

obligations on a defendant is constrained by the terms of agreement entered by the parties to the consent decree.

979 F.2d 1141, 1153 (6th Cir. 1992).

It is important to recall that Sault Tribe is not the Defendant in this matter—the State of Michigan is. This case was commenced to restrain the State from interfering with the treaty fishing rights of Sault Tribe and the other 1836 Treaty tribes. *United States v. Michigan*, 471 F.Supp. at 203. The tribes prevailed in this litigation. Their treaty rights were affirmed, and the State was precluded from regulating the tribes' treaty fishing activities unless it met the rigorous standard established by the Sixth Circuit. *United States v. Michigan*, 653 F.2d 277 (6th Cir. 1981), *cert. denied*, 454 U.S. 1124 (1981). The State has never attempted to meet that rigorous standard, nor could it. Yet the vast majority of the restrictions and obligations of the Consent Decree fall on the tribes. The Consent Decree was never aimed at remedying a violation of federal law, much less one by Sault Tribe. Nor does it remedy any ongoing violation of federal law, much less one by Sault Tribe. Accordingly, the Consent Decree can no longer remain in effect with respect to Sault Tribe.

**B.    SAULT TRIBE HAS FULFILLED THE OBJECTIVES OF THE CONSENT DECREE AND RESPONSIBILITY FOR REGULATING ITS OWN TREATY FISHING ACTIVITIES MUST NOW BE PROMPTLY RETURNED TO IT.**

A consent decree must "further the objectives of the law upon which the complaint was based." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004). "The federal court must exercise its equitable powers to ensure that when the objects of the decree have been obtained, responsibility for discharging [a government's] obligations is returned promptly to the [government] and its officials." *Id*. at 442.  *See also John B.,* 710 F.3d at 413 (responsibility for discharging a government's obligations must be returned promptly to the government and its officials once

circumstances warrant); *compare Vanguards*, 23 F.3d. at 1021-22 (temporarily extending a decree because the purposes of the decree had not yet been met).

Sault Tribe has a strong and legitimate governmental interest in managing its own treaty fishing activities; continuing the consent decree disregards that interest. *Cf. Frew*, 540 U.S. at 441 (if not appropriately limited, consent decrees involving governments "may improperly deprive future officials of their designated legislative and executive powers"); *Milliken v. Bradley*, 433 U.S. 267, 280-81 (1977) ("[F]ederal courts…must take into account the interests of [governmental] authorities in managing their own affairs…."). A court should not substitute its own policy judgments for those of the government officials to whom such decisions are properly entrusted. *See Horne*, 557 U.S. at 455. Indeed, binding all future officers of a government to a decree's proscriptions "would be a perverse and undemocratic state of affairs." *Doe v. Briley*, 562 F.3d 777, 781 (6th Cir. 2009).

The Consent Decree does not further the objectives of the law on which the Complaint in this case was based. That law is the 1836 Treaty. Rather than further Sault Tribe's rights reserved under the 1836 Treaty, the Consent Decree significantly restricts them. *See* Exhibit 1 (depicting the restrictions on Sault Tribe's fishing activities under the Consent Decree).

Moreover, the Consent Decree contains no specific objectives that had to be met by its expiration date. Instead, the Consent Decree simply imposes extensive restrictions on Sault Tribe's treaty fishing rights. *Id*. Sault Tribe has abided by those restrictions for more than 20 years. Thus, to the extent there were objectives of the Consent Decree, Sault Tribe has fulfilled those objectives. It is now time to return to Sault Tribe the responsibility of making its own policy decisions and regulating its own treaty fishing activities. Otherwise, Sault Tribe is improperly deprived of the ability to exercise its legislative and executive powers as a sovereign government,

which is contrary to federal policies supporting tribal sovereignty and self-government.  *E.g.*, *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216-17 (1987) ("[T]raditional notions of Indian sovereignty and the congressional goal of Indian self-government…are important federal interests."); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14 (1987) ("We have repeatedly recognized the Federal Government's longstanding policy of encouraging tribal self-government.")

## CONCLUSION

The Sault Tribe and all other parties to this case agreed to a consent decree for approximately 22 years and three months.  Each of the sovereign parties understood that time period would run on November 14, 2022, and each only bound their future political leaders for the agreed-upon period.  That period has run.  The fact that the period has run is not a change in circumstances, and is, instead, the opposite—it was expected and agreed upon end date for the Consent Decree.  The other parties to this case now want to impose upon the sovereign Sault Tribe a new agreement, beneficial to them at the expense of the Sault Tribe and the Sault Tribe's treaty rights.  Under the law of this case, they would have an extremely difficult time meeting their burden to restrict the Sault Tribe's sovereign and treaty rights.

Instead of trying to meet that heavy burden, and instead of negotiating in good faith with the Sault Tribe to reach a new consent decree, they are asking this Court to impose an indefinite extension on the Sault Tribe.  Oxymoronically they seek to impose a "consent decree" on a party that does not consent.  This Court cannot impose the consent decree without consent.  Without the benefit of briefing, without a hearing, and without the requisite facts, this Court issued that order.  The Court should reconsider that order.

13

The Movants' Motion to Extend was palpably defective and thereby misled the Court.[3]  It failed to inform the Court of the required process and legal standard for an extension of the Consent Decree.  It also failed to even try to meet that standard, which requires a different disposition of the case.  The Motion to Extend should have been, and must be, denied as to Sault Tribe because it was utterly unsupported.  There is a need to correct a clear error or prevent manifest injustice given the complete failure of the Movants and the Court to follow the required process and meet the applicable legal standard.  In addition, the indefinite extension of the Consent Decree wreaks havoc on the parties' bargain, which is clearly and unambiguously that the Consent Decree expire after 20 years.  Such an extension is unprecedented in circumstances like this one and legally without merit.  Sault Tribe did not, and does not, consent to the extension and, therefore, cannot be indefinitely bound to the Consent Decree.[4]  Thus, reconsideration and alteration and amendment of the Court's Order is appropriate under both Local Civil Rule 7.4 and Rule 59(e) of the Federal Rules of Civil Procedure.

---

[3] Sault Tribe does not know what misled the Movants themselves, but something must have misled them for them to fail to disclose the appropriate process and standard for an extension of the Consent Decree.

[4] Sault Tribe does not seek to disturb the extension with respect to the Movants, who have consented to the extension.

Respectfully submitted this 12th day of December, 2022.

PATTERSON EARNHART REAL BIRD
& WILSON LLP

*s/ Jeffrey S. Rasmussen*
Jeffrey S. Rasmussen
Frances C. Bassett
Jeremy J. Patterson
Linda F. Cooper
Johnathon "JR" Loera
1900 Plaza Drive
Louisville, Colorado 80027
Telephone: (303) 926-5292
Facsimile: (303) 926-5293
Email: jrasmussen@nativelawgroup.com
Email: fbassett@nativelawgroup.com
Email: lcooper@nativelawgroup.com
Email: jpatterson@nativelawgroup.com
Email: jloera@nativelawgroup.com

*Counsel for Sault Ste. Marie Tribe of
Chippewa Indians*

15

**EXHIBIT 1**
**Consent Decree Restrictions in the 1836 Treaty Waters**



**CERTIFICATE OF WORD COUNT COMPLIANCE**

I certify that this brief contains 4,288 words, in compliance with W.D. Mich. LCivR 7.3(b).

Microsoft Word, Version 2211, was used to generate this word count.

*s/ Jeffrey S. Rasmussen*
Jeffrey S. Rasmussen

**CERTIFICATE OF SERVICE**

I certify that on December 12, 2022, I caused the foregoing **PLAINTIFF-INTERVENOR SAULT STE. MARIE TRIBE OF CHIPPEWA INDIANS BRIEF IN SUPPORT OF MOTION TO RECONSIDER OF ORDER INDEFINITELY EXTENDING THE 2000 GREAT LAKES FISHING CONSENT DECREE** to be electronically filed with the Clerk of Court using the Court's ECF system which will send notification of such filing to the attorneys of record in this matter.

*s/ Jeffrey S. Rasmussen*
Jeffrey S. Rasmussen