# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  March 13, 2025

Mr. James Alan Bransky
9393 Lake Leelanau Drive
Traverse City, MI 49684-7713

Mr. Christopher D. Dobyns
Ms. Kelly M. Drake
Office of the Attorney General of Michigan
P.O. Box 30755
Lansing, MI 48909

Mr. David A. Giampetroni
Kanji & Katzen
P.O. Box 3971
Ann Arbor, MI 48104

Ms. Rebecca S. Liebing
Bay Mills Indian Community
12140 W. Lakeshore Drive
Brimley, MI 49715

Ms. Rebecca Millican
Mr. William Rastetter
Olson, Bzdok & Howard
420 E. Front Street
Traverse City, MI 49686

Mr. Ryan Mills
Sault Ste. Marie Tribe of Chippewa Indians
523 Ashmun Street
Sault Ste. Marie, MI 49783

Mr. Benjamin W. Richmond
Department of Justice
Environment & National Resources
408 Atlantic Avenue, Suite 236
Boston, MA 02110

Ms. Kathryn Louise Tierney
Bay Mills Indian Community
12140 W. Lakeshore Drive
Brimley, MI 49715

                      Re:  Case No. 23-1931, *USA v. MI*
                           Originating Case No. : 2:73-cv-00026

Dear Counsel,

    The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                          Yours very truly,

                                          Kelly L. Stephens, Clerk

                                        Cathryn Lovely
                                        Deputy Clerk

cc:  Ms. Ann E. Filkins

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0056p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

BAY MILLS INDIAN COMMUNITY; GRAND TRAVERSE
BAND OF OTTAWA AND CHIPPEWA INDIANS; LITTLE
RIVER BAND OF OTTAWA INDIANS; LITTLE TRAVERSE
BAY BANDS OF ODAWA INDIANS,                                    No. 23-1931

*Intervenor Plaintiffs-Appellees,*

SAULT STE. MARIE TRIBE OF CHIPPEWA INDIANS,

*Intervenor Plaintiff-Appellant,*

*v.*

STATE OF MICHIGAN, and its agents,

*Defendants-Appellees.*

————————

Appeal from the United States District Court for the Western District of Michigan at Marquette.
No. 2:73-cv-00026—Paul Lewis Maloney, District Judge.

Argued:  December 10, 2024

Decided and Filed:  March 13, 2025

Before:  GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

————————

### COUNSEL

**ARGUED:**  Ryan J. Mills, SAULT STE. MARIE TRIBE OF CHIPPEWA INDIANS, Sault Ste.
Marie, Michigan, for Appellant.  Kelly M. Drake, OFFICE OF THE MICHIGAN ATTORNEY
GENERAL, Lansing, Michigan, for Appellee State of Michigan.  Benjamin W. Richmond,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee United
States.  **ON BRIEF:**  Ryan J. Mills, SAULT STE. MARIE TRIBE OF CHIPPEWA INDIANS,

No. 23-1931                    *United States v. Michigan*                    Page 2

Sault Ste. Marie, Michigan, for Appellant.  Kelly M. Drake, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee State of Michigan.  Benjamin W. Richmond, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee United States.  William Rastetter, Rebecca Millican, OLSON & HOWARD, PC, Traverse City, Michigan for Appellee Grand Traverse Band of Ottawa and Chippewa Indians.  Kathryn L. Tierney, Rebecca Liebing, BAY MILLS INDIAN COMMUNITY, Brimley, Michigan, for Appellee Bay Mills Indian Community.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.  Plaintiff-Appellant Sault Ste. Marie Tribe of Chippewa Indians (the "Sault Tribe") objects to the district court's entry of the 2023 Great Lakes Fishing Decree (the "2023 Decree").  The Coalition to Protect Michigan Resources (the "Coalition") mounted a similar challenge in a separate but related appeal.  The 2023 Decree results from a three-year negotiation between seven sovereigns—the United States, the State of Michigan, the Bay Mills Indian Community, the Grand Traverse Band of Ottawa and Chippewa Indians, the Little Traverse Bay Bands of Odawa Indians, the Little River Band of Ottawa Indians, and the Sault Ste. Marie Tribe of Chippewa Indians (collectively, the "Tribes")—to resolve their differences in the allocation, management, and regulation of fishing in the Great Lakes waters.  It reflects a balance that the parties struck between preserving the Tribes' treaty-reserved rights and preserving the fishery waters as an ecological resource.

As the only party that refused to stipulate to the 2023 Decree's entry, the Sault Tribe argued that the district court (i) lacked the jurisdiction to enter the 2023 Decree without its consent and (ii) failed to evaluate the decree's tribal fishing regulations based on the rigorous standard set out in *People v. LeBlanc*, 248 N.W.2d 199 (Mich. 1976).  In addition, the Sault Tribe raised 137 "specific" objections to the 2023 Decree's provisions based on a more generalized assertion that the 2023 Decree unduly restricts its tribal rights under an 1836 treaty. The district court overruled all of the Sault Tribe's objections and entered the 2023 Decree, thereby binding the Sault Tribe to the 2023 Decree's terms.  *United States v. Michigan*, 2023 WL 5444315, at *70 (W.D. Mich. Aug. 24, 2023).  On appeal, we affirm the district court's entry of the 2023 Decree.

I.

A.  The 1836 Treaty.

In 1836, the Ottawa and Chippewa nations of Indians entered into a treaty (the "1836 Treaty") with the United States in which they ceded much of their land, including areas of the Great Lakes, in what is now the State of Michigan.  *Treaty of Washington*, 7 Stat. 491 (Mar. 28, 1836).  Specifically, the 1836 Treaty reserved for the Ottawas and Chippewas the right to fish in certain areas of water in Saint Mary's River near Sugar Island, southern Lake Superior, northern Lake Michigan, northern Lake Huron, and Grand Traverse Bay.  *See id.*, Art. 13.

B.  The 1979 Decree.

In 1973, the United States initiated this case against the State of Michigan to protect Bay Mills and the Sault Tribe's treaty-protected right to fish in the Great Lakes area ceded to the United States under the 1836 Treaty.  *United States v. Michigan*, 471 F. Supp. 192, 203–04 (W.D. Mich. 1979).  Bay Mills and the Sault Tribe intervened as plaintiffs and political successors in interest to the original Ottawa and Chippewa signatories.  *Id.*  The remaining Grand Traverse, Little River, and Little Traverse tribes, who are also successors to the signatories, later intervened as plaintiffs when they became federally recognized.  A member of the Coalition— Michigan United Conservation Clubs ("MUCC")—tried to intervene several times over the course of the litigation, but the court denied intervention explaining that MUCC's interests were adequately represented by the State and MUCC's involvement as amicus curiae.  *Id.* at 204.

In 1979, the court held that Bay Mills and the Sault Tribe, as political successors in interest to the original signatories to the 1836 Treaty, reserved the right to fish in the treaty waters without state regulation.  *Michigan*, 471 F. Supp. at 216.  Consistent with this holding, the court issued a Declaratory Judgment and Decree (the "1979 Decree").  *Id.* at 278.  The 1979 Decree concluded that the State had no power to regulate tribal fishing in a manner inconsistent with the reserved rights under the 1836 Treaty.  *Id.* at 281.  The 1979 Decree also established the district court's continuing jurisdiction over this case "for the life of this decree to take evidence, to make rulings and to issue such orders as may be just and proper upon the facts and law, and in the implementation of this decree."  *Id.*  The 1979 Decree, however, did not establish a

regulatory framework under which the Tribes would exercise their treaty-protected fishing rights. *See id.* at 278–281.

The United States sought to remedy this problem.  After the State appealed and obtained a stay of the 1979 Decree pending appeal, the United States Secretary of the Interior issued "comprehensive regulations governing Indian fishing in the Great Lakes, including gill net fishing," which prohibited treaty fishing in certain areas, regulated net mesh size, and prohibited the harvest of certain species of endangered fish.  *United States v. Michigan*, 623 F.2d 448, 449 (6th Cir. 1980), *modified*, 653 F.2d 277 (6th Cir. 1981).  Based on these new federal regulations, this court remanded the case for the district court to determine whether the federal regulations preempted Michigan's regulations on treaty fishing.  *Id.* at 450.

While the case was on remand, however, the federal regulations lapsed and, in response, the State issued emergency regulations concerning treaty fishing which were less protective of treaty rights than the lapsed federal regulations.  *United States v. Michigan*, 653 F.2d 277, 278 (6th Cir. 1981).  Because the preemption issue was moot, this court modified its previous remand order and remanded the case for the district court to consider whether the State may impose its emergency regulations on treaty-protected fishing rights under a rule of reason standard established in *People v. LeBlanc*, 248 N.W.2d 199 (Mich. 1976).  *Michigan*, 653 F.2d at 279 (6th Cir. 1981) (clarifying that the right of the Tribes to fish in the ceded waters "is not absolute").

According to this court, any unilateral state regulations restricting the Tribes' fishing rights are subject to the rigorous *LeBlanc* standard.  *See id.*  Under the *LeBlanc* standard, the State bears the burden of showing by clear and convincing evidence that any restriction it imposes on the Tribes' fishing rights under the 1836 Treaty (i) is a necessary conservation measure, (ii) is the least restrictive alternative method available for preserving fisheries in the Great Lakes from irreparable harm, and (iii) does not discriminatorily harm tribal fishing or favor other classes of fishermen.  *Id.*

After this court remanded the case for the district court to evaluate the State's regulations under *LeBlanc*, the State advised the district court that it had no intention of satisfying the *LeBlanc* standard.  *United States v. Michigan*, 520 F. Supp. 207, 211 (W.D. Mich. 1981).

Accordingly, the district court held that the lapsed federal regulations, which the Tribes voluntarily adopted as part of their tribal conservation codes, would remain in effect as the interim rules on treaty fishing.  *Id.* at 210.

Roughly a week later, the Sault Tribe, Bay Mills, and Grand Traverse moved to implement a new set of intertribal regulations proposed by the Chippewa-Ottawa Treaty Fishery Management Authority.[1]  The district court, over the State's objections, granted the three tribes' motion to implement the new set of regulations.  *United States v. Michigan*, 534 F. Supp. 668, 670 (W.D. Mich. 1982).  The district court affirmed its continuing jurisdiction to "modify the current fishing regulations because of the mandate of the Court of Appeals, [the district] court's prior orders, and basic equitable powers."  *Id.* at 669 (citing *Michigan*, 653 F.2d at 279; 520 F. Supp. at 211; 471 F. Supp. at 218).

### C.  The 1985 Decree.

In 1983, the Sault Tribe, Bay Mills, and Grand Traverse moved to allocate the fishery resource between the State and tribal fishers based on the "dynamic nature" of the resource and the "ever changing needs of the user groups."  DE 621, Mot. to Allocate, Page ID 16290. According to these tribes, the district court could allocate the resource based on (i) the court's express reservation of continuing jurisdiction under the 1979 Decree, (ii) the court's inherent power to implement and modify its prior declaratory judgment, and (iii) the Declaratory Judgment Act, which provides for "further necessary or proper relief based on a declaratory judgment or decree."  28 U.S.C. § 2202.

The district court agreed on all three issues.  It allowed the motion to allocate to proceed and set a hearing for April 1985.  *United States v. Michigan*, 12 Indian L. Rep. 3079 (W.D. Mich. 1985).  A few months later, the district court appointed a special master to facilitate a settlement of the allocation and management of the fishery resource.  *Id.* at 3079–80.  Before the April 1985 hearing, the parties reached a negotiated agreement, which Bay Mills submitted to the

---

[1]This organization is now known as the Chippewa-Ottawa Resource Authority and remains involved in inter-tribal regulation under the 2000 Decree.

district court in the form of a motion for entry of a consent order. *Id.* at 3080. In April 1985, the district court entered the consent order (the "1985 Decree"). *Id.*

But a month later, Bay Mills withdrew its consent and proposed a different "50-50 allocation proposal." *Id.* The district court then ordered a "bifurcated hearing" to determine whether to enter the parties' original 1985 Decree or Bay Mills's allocation proposal, or neither. *Id.* As before, the district court asserted its "powers as a court of equity" to "allocate a fishery resource in order to effectuate a treaty." *Id.* (citing *Washington v. Fishing Vessel*, 443 U.S. 658 (1979)). The district court considered several factors in determining whether a set of regulations protected the reserved rights of the Tribes and preserved the resource. *Id.* at 3081. After providing the parties with an opportunity to present objections, the court concluded that the 1985 Decree was "superior both in terms of protecting the Indian reserved treaty fishing right, and for the preservation of the resource." *Id.* at 3088. The district court adopted the 1985 Decree, effective for the next fifteen years, finding it "in the best interests of all tribes involved," including Bay Mills. *Id.*

### D. The 2000 Decree.

In 1998, all seven parties began negotiating a successor to the 1985 Decree.[2] To avoid a period during which no rules would govern the management of the fishery resource, the district court ordered that the 1985 Decree would remain in effect during the interim period between the 1985 Decree's expiration and the entering of its successor. Throughout the negotiation process, the district court exercised its continuing jurisdiction to provide oversight and hold hearings on proposals and objections.

In August 2000, after all seven parties reached an agreement, the district court entered the parties' stipulated consent decree (the "2000 Decree") effective for the next twenty years.[3] The

---

[2]That same year, another member of the Coalition—the Grand Traverse Area Sport Fishing Association ("GTASFA")—moved to intervene as a party arguing that the state did not sufficiently represent its interests. The court denied the motion because GTASFA sought intervention after several years of participation as amicus, and the delayed intervention would only cause "confusion[] and chaos" and would "prejudice" decree enforcement.

[3]After the court entered the decree, in 2004, 2005, and 2007, the Coalition, along with other interested groups, moved to intervene as parties in litigation involving the tribes' inland treaty rights. The motions were either denied or voluntarily dismissed.

No. 23-1931                    *United States v. Michigan*                    Page 7

2000 Decree also contained a provision stating that the district court shall retain "continuing jurisdiction" over this case for purposes of enforcing the decree.   DE 1458, 2000 Consent Decree, Page ID 3336.

E.  The 2023 Decree.

In September 2019, the parties, along with several amici, began negotiating a successor decree to the 2000 Decree.  Over the course of three years, the parties moved to extend the 2000 Decree several times.  The Sault Tribe often opposed these motions.  The district court ultimately extended the 2000 Decree, until all objections to the parties' proposed decree were adjudicated. The Coalition again moved to intervene and sought "full-party status."  The district court denied the motion as untimely and unnecessary because the Coalition's interests were sufficiently represented through its extensive participation as amici.

In December 2022, unlike in the 2000 Decree, only the United States, the State, Bay Mills, Grand Traverse, Little River, and Little Traverse (the "Stipulating Parties") consented to the proposed 2023 Decree.  The Sault Tribe and the Coalition filed 139 and 11 objections, respectively, to the entry of the proposed 2023 Decree.  After a two-day hearing, the district court permitted the Sault Tribe and the Coalition to file proposed findings of fact and conclusions of law with respect to any of the issues raised in their objections.

After reviewing the Sault Tribe's and the Coalition's objections and submissions, the district court approved and entered the 2023 Decree effective for a period of twenty-four years. *Michigan*, 2023 WL 5444315, at *70 (W.D. Mich. Aug. 24, 2023).  The district court rejected the Sault Tribe's two main arguments that (i) the court lacks the authority to approve the 2023 Decree over the objection of a party and (ii) the State lacks the power to restrict their treaty-protected fishing rights because the State did not meet the *LeBlanc* standard.  *Id.* at *6–8.  First, the district court concluded that it has repeatedly exercised its continuing jurisdiction and equitable powers to issue orders to protect treaty rights and the fishery resource throughout the history of this case, even over a party's objection after providing the objecting party with due process.  *Id.* at *7 (citing *Michigan*, 653 F.2d at 280; *Michigan*, 12 Indian L. Rep. 3079). Second, the district court concluded that, because the 2023 Decree is the "product of negotiation"

and "not a unilateral regulation by the State," the *LeBlanc* standard does not apply.  *Id.*  Third,
the district court overruled all 137 of the Sault Tribe's specific objections to the 2023 Decree
because they failed to "show that the [2023 Decree] is unreasonable or inconsistent with the
Treaty or the law of the case" and merely reflected the Sault Tribe's individual preferences.  *Id.*
at *55.  Along the same vein, the district court overruled the Coalition's 11 objections.  *Id.* at
*56.  Unlike the Sault Tribe, the Coalition argued that the 2023 Decree did not sufficiently
regulate the fishery and would detrimentally impact the resource.  *Id.*  The court overruled all
objections while noting that although the Coalition's objections "adopt[ed] the opposite view of
the Sault Tribe objections, the Proposed Decree represent[ed] a medium between the [two]" and
"protected the [fishing] resource while appreciating the Treaty right."  *Id.*  The Sault Tribe now
appeals the district court's entry of the 2023 Decree.[4]

## II.

We review the district court's entry of the 2023 Decree as an allocation of a fishery
resource for abuse of discretion.  *See Fishing Vessel*, 443 U.S. at 687 (recognizing that district
court's apportionment of fishery subject to treaty right was based on the "exercise of its
discretion"); *United States v. Washington*, 520 F.2d 676, 686–88 (9th Cir. 1975) (reviewing
district court's decree apportioning fishery subject to treaty right for abuse of discretion).  We
also review the district court's modification of the 2000 Decree for abuse of discretion.
*Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994).

"The phrase, 'abuse of discretion,' is generally regarded as a 'definite and firm
conviction [on the part of the reviewing court] that the court below committed a clear error of
judgment in the conclusion it reached upon a weighing of the relevant factors.'"  *Mosby-*
*Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 602 (6th Cir. 2018) (alteration in
original) (citation omitted).  "An abuse of discretion occurs if the district court relies on clearly

---

[4]The Coalition filed a separate appeal challenging the district court's entry of the 2023 Decree.  The
Coalition argued that the district court's analysis under the law of the case improperly applied the *Enslen* factors to
the decree, erroneously disregarded the Coalition's expert report and lay witness testimony, and abused its discretion
by rejecting the Coalition's objections to various sections of the decree.  We dismissed the appeal for lack of
jurisdiction because the Coalition was never a party to the suit.  *United States v. Michigan*, No. 23-1944, 2025 WL
764613, at *5 (6th Cir. Mar. 11, 2025).

erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Cole v. City of Memphis*, 839 F.3d 530, 540 (6th Cir. 2016) (citation omitted).

Under the doctrine of the law of the case, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). "Issues decided at an early stage of litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." *Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 766 (6th Cir. 1989) (citation omitted). Although not an "inexorable command," the doctrine generally precludes a court from "reconsideration of identical issues." *Petition of U.S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973). "We previously have stated three reasons to reconsider a ruling: (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Moore v. Mitchell*, 848 F.3d 774, 776 (6th Cir. 2017) (citation omitted).

The law of the case governing review of proposed fishing regulations is set forth in *United States v. Michigan*, 12 Indian L. Rep. 3079 (W.D. Mich. 1985). Under *Michigan*, the court's paramount concern "at all times when sifting through the complex and conflicting evidence [must be] the desire to reach a fair and equitable decision in keeping with the reserved rights of the [Tribes] and the preservation of the resource." 12 Indian L. Rep. at 3081. Although not all factors should be given equal weight, we consider fifteen factors in choosing whether to adopt the Proposed Decree:

> Preservation and conservation of the resource; impact of the plans on all three tribes; consistency of the plan with the tribal right to fish and the recognition that the resource is shared; reduction of social conflict; feasibility and methods of implementation; protection of Indian fishermen from discrimination in favor of other classes of fishermen; proximity; access; species of fish stocks available; harvestability of fish stocks; the economic impact on Indian fishermen; stability of the fishery; contaminant levels; management and marketing concerns; and flexibility versus predictability of the fishery.

*Id.*  The Stipulating Parties bear the burden of establishing that their proposed decree satisfies these standards.  *Id.*

### III.

The Sault Tribe argues that the district court abused its discretion when it (i) approved the 2023 Decree over the Sault Tribe's objections, (ii) approved the 2023 Decree without applying the standard for injunctive relief, (iii) approved the 2023 Decree without holding a trial, (iv) entered the 2023 Decree because it fails to further the objective of the law on which the United States's initial complaint is based, and (v) extended the 2000 Decree.  We address each argument in turn.

### A.

The district court did not err when it approved the 2023 Decree over the Sault Tribe's objections.  The Sault Tribe argues that the district court improperly entered the 2023 Decree by imposing obligations on it without its consent.  As the Sault Tribe correctly notes, the 2023 Decree is not a "consent" decree given that the Stipulating Parties failed to obtain its consent.[5] Unlike courts entering consent decrees, the source of the district court's authority to approve the 2023 Decree did not derive from the parties' unanimous agreement.  *Compare Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 522 (1986) ("[I]t is the parties' agreement that serves as the source of the court's authority to enter any judgment at all."), *with Michigan*, 12 Indian L. Rep. at 3081, 3093 (entering the 1985 Decree based on its "equitable" authority and "continuing jurisdiction").  Thus, the cases to which the Sault Tribe cites involving consent decrees requiring unanimous consent are inapposite.

The Sault Tribe asserts a broader argument: the court must always find unanimous consent among the parties before it can modify fishing regulations.  Rather than relying on the parties' unanimous consent, the district court invoked its continuing jurisdiction and inherent equitable power "to issue orders necessary to protect the resource and the Treaty rights."

---

[5]The parties, amici, and the district court all agree that the 2023 Decree is not a consent decree.

*Michigan*, 2023 WL 5444315, at *7.  The law of the case supports the district court's broad authority to enter the 2023 Decree over the Sault Tribe's objections.

From this case's inception, the district court has expressly and repeatedly retained its jurisdiction to enter regulations protecting the fishery resource.  *See*, *e.g.*, *Michigan*, 471 F. Supp. at 281 ("The court retains jurisdiction of this case for the life of this decree."); *Michigan*, 520 F. Supp. at 211 n.5 ("[T]he inability of the parties to negotiate, or to litigate in the District Court has meant that this court must continue to assume a role in Great Lakes fishing."); *Michigan*, 653 F.2d at 279 (affirming district court order adopting lapsed federal regulations governing the fishery); *Michigan*, 534 F. Supp. at 669 (granting motion to adopt proposed intertribal regulations); DE 2076-1, Order, Page ID 12803 (approving tribal regulations over State's objection); DE 2080-1, Order, Page ID 12833 (recognizing the court's "continuing jurisdiction" to approve new tribal regulations); *see also Michigan*, 12 I.L.R. at 3089 (noting the parties had "[o]n numerous occasions . . . invoked the court's continuing jurisdiction to resolve controversies and disputes among themselves").

For decades, the parties themselves, including the Sault Tribe, have invoked the district court's continuing jurisdiction, as established in the 1979 Decree, and inherent equitable power to allocate and regulate the fishery resource.  *E.g.*, DE 621, Mot. to Allocate, Page ID 16282, 16288–89; DE 635, Mem. P&A. Resp. to State's Br. Opp. Allocation, Page ID 17266 ("[T]he Court retained explicit continuing jurisdiction of this case . . . But, even without such an explicit retention of jurisdiction, the Supreme Court long ago stated that courts have inherent power to modify decrees and injunctions as circumstances require." (citing *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)); DE 1457, Stip. for Entry of 2000 Decree, Page ID 3402 (stating that "the Court has continuing jurisdiction in this case over these treaty fishing rights, including jurisdiction to allocate the available harvest of fish in the 1836 Treaty waters").  Under the law of the case, the district court's continuing jurisdiction and inherent equitable power together undergird its ability to allocate the fishery resource in line with treaty-protected rights and resource conservation over a party's objections.  *Michigan*, 12 Indian L. Rep. at 3093; *Michigan*, 534 F. Supp. at 669.

Contrary to the Sault Tribe's assertion, the district court did not require unanimous consent among the parties to enter the 2023 Decree. The district court has either asserted or exercised its power to enter fishing regulations over a party's objections on at least three occasions.

*First*, in 1982, after negotiations with the State had failed, the Sault Tribe, Bay Mills, and Grand Traverse moved to implement a new set of intertribal regulations proposed by the Chippewa-Ottawa Treaty Fishery Management Authority to replace the federal regulations promulgated by the Secretary of the Interior. The Sault Tribe argued that the district court had the jurisdiction to modify previous fishing regulations and approve future proposals, even over the State's objections, "pursuant to the court of appeal's direction" and based on the district court's continuing jurisdiction. *See* DE 556, Mem. P. & A. in Supp. of Appl. for Prelim. Inj., Page ID 18453 (citing *Michigan*, 653 F.2d at 279). The district court agreed, finding that the proposed regulations "provide[d] adequate protection for the resource," were "simpler to understand and enforce" than previous regulations, and addressed the "dynamic nature" of the fishery resource. *Michigan*, 534 F. Supp. at 669. Invoking its "continuing responsibility over its decrees," its prior orders, and "basic equitable powers," the district court granted the Tribes' motion to implement the new set of regulations over the State's objections. *Michigan*, 534 F. Supp. at 669–70 (citing *Michigan*, 653 F.2d at 279; *Michigan*, 520 F. Supp. at 211; *Michigan*, 471 F. Supp. at 218).

As the district court's holding demonstrates, the court may act as a court of equity and fashion a remedy that protects treaty rights and preserves the fishery resource without unanimous consent among the parties. *See id.* The Sault Tribe argues that the district court's entry of the intertribal regulations over the State's objections is an ill-suited comparison because that circumstance did not involve imposing regulations on the State itself. But this ignores the State's own countervailing interest in protecting the fishery resource from overharvesting. *Michigan*, 12 Indian L. Rep. at 3083 (recognizing the State's interest in the "predictability and stability" of the fishery resource). In 1982, the district court made clear that its "equitable powers" authorized it to enter the Tribes' proposed intertribal regulations over the State's objections. *Michigan*, 534 F. Supp. at 669 (stating that the State's request for an adjournment "would only further prolong

these proceedings[] and frustrate tribal fishing efforts if rule changes were made in mid-season"). We find no compelling reason why this court should apply a different set of standards now that the Sault Tribe is the objecting party.

*Second*, in 1983, the district court again asserted its authority to issue new fishing regulations over a party's objections. The Sault Tribe, Bay Mills, and Grand Traverse moved the court to adopt a revised proposal to allocate the fishery resource over the State's objection. *See* DE 621, Mot. to Allocate, Page ID 16282, 16288–89. The Tribes relied on the district court's continuing jurisdiction and "inherent powers" to implement regulations on the fishery resource. *See* DE 621, Mot. to Allocate, Page ID 16282, 16288–89. The Sault Tribe argued that a court-ordered allocation, based on the court's inherent equitable power to allocate the resource, was "required to implement fully the Court's [1979 Decree]" in order to "allow[ ] treaty fishers the full exercise of their federal rights." DE 2104-1, Tribes' Mem. of P. & A. in Resp. to State's Opp'n to Allocation, Page ID 14172–73. In the Sault Tribe's own words, "[a]llocation, in its most fundamental sense, is an equitable apportionment . . . [t]here is simply no bar of which the Tribe is aware of that prevents this Court from entering declaratory relief . . . necessary to carry out the court's [1979 Decree]." *Id.* at 14175. Thus, in 1983, the Sault Tribe advocated for a decidedly broad view of the district court's jurisdiction—a view it now disavows.

Although the court did not issue a final ruling on the Tribes' request for allocation, the district court agreed with the Sault Tribe, affirmed its broad jurisdiction in the case, and permitted the motion to allocate to proceed over a party's objections. In doing so, the district court first reaffirmed its continuing jurisdiction to make rulings and issue orders based on the 1979 Decree. According to the court, "[t]his continuing jurisdiction has been invoked in the past to approve new tribal regulations, and . . . [t]he Tribes' motion for allocation of the resource, though different in content, is not different in kind." DE 2080-1, Order, Page ID 12890. Second, the court reiterated that it had expressly retained inherent equitable power to modify a decree "in light of changed circumstances, or in view of experience indicating the decree is not adequately adapted to achieving its purpose." *Id.* (citing *Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961)). Third, the court concluded that it could issue the allocation based on its power to modify prior declaratory judgments under the Declaratory

No. 23-1931                    *United States v. Michigan*                    Page 14

Judgment Act, 28 U.S.C. § 2202 because "[t]he fact that several years have passed since [a] decree was issued does not preclude a motion for further relief." *Id.* at 12891. For those reasons, the court recognized its authority to issue new fishing regulations over a party's objections.

*Third*, in 1985, the district court entered the 1985 Decree, imposing on the parties detailed rules on when, where, and how various user groups, including Bay Mills, could use the fishery resource, over Bay Mills's objections. *Michigan*, 12 Indian L. Rep. at 3079. The court's basis for its court-ordered 1985 Decree is illustrative. According to the district court, once a plan satisfies the first threshold requirement under *Fishing Vessel* by providing for the Tribes' "reasonable livelihood needs," the foremost consideration becomes determining which plan would best "protect[] the interests of all concerned to the extent possible." *Id.* at 3081. Consistent with prior adjudications, the court's most important goal is not to achieve unanimous agreement but "to reach a fair and equitable decision in keeping with the reserved rights of the [Tribes] and the preservation of the resource." *Id.*

Toward this end, the court reasoned that the 1985 Decree reflected "the brightest prospect for peace and preservation" because having a comprehensive regulatory framework in place would, among other things, (i) provide sound resource management to support a stable fishery without which all users would be harmed, (ii) reduce social conflict between the parties, and (iii) establish a uniform data monitoring system needed to sustainably manage the resource on a long-term basis. *Id.* at 3080, 3083–86. Having applied its fifteen-factor analysis and concluding that the 1985 Decree was in the best interests of all parties, the court entered the 1985 Decree over Bay Mills's objections. *Id.* at 3088. In the court's own words, although entering the 1985 Decree was "not a majoritarian finding, by any means," *id.* at 3086, "this court's principal concern has been one of preservation: preservation of the treaty-reserved rights of the tribal fishers; and preservation of the resource," *id.* at 3079.[6]

---

[6]In 1985, the Sault Tribe did not disagree with this conclusion. In its 1985 pretrial brief, the Sault Tribe argued that the core issues are the Tribes' "reasonable needs" and "sufficiency of the proposed plan to adequately protect the resource." DE 829, Sault Tribe's Br., Page ID 23645–46. As the Sault Tribe concluded in its brief, "*[n]otwithstanding the lack of consent,* we believe that [the 1985 Decree] should be adopted by the court, as it fully effectuates the Tribes' treaty rights, protects the resource, and accommodates the interest of all parties to the extent possible." *Id.* at 23649 (emphasis added).

The Sault Tribe attempts to limit the reach of the district court's opinion in 1985 by alleging that all parties to the 1985 Decree had agreed beforehand that the district court could choose one of the two proposals and, thus, there was at least a process-based consensus among the parties.  But this does not diminish the court's independent authority as a "court of equity" nor the crux of the court's holding, which established an individualized fifteen-factor test for each proposal.  *Michigan*, 12 Indian L. Rep. at 3081, 3088.   Under the Sault Tribe's interpretation, the standards set forth in Judge Richard Enslen's 1985 opinion would not apply unless there are at least two different proposals under consideration.  This is an implausibly narrow interpretation because the upshot would be that any objector could unilaterally derail an otherwise fair and equitable proposal by simply choosing not to propose an alternative set of regulations.   Such a reading is inconsistent with the court's "paramount concern" of implementing a fair and equitable proposal.  *Id.* at 3081.  In entering the 1985 Decree, the district court made clear that unanimous consent among the parties is not required for it to enter a proposed decree that protects treaty rights and preserves the fishery resource.[7]  The Sault Tribe has not rebutted the applicable legal standards beyond its unsupported and ahistorical assertions to the contrary.[8]

In sum, the absence of unanimous consent does not preclude the district court from entering new fishing regulations under its continuing jurisdiction.  *See Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001) (stating that the district court has the discretion to limit consideration of objections to a decree if the proposed settlement is "fair, adequate and reasonable").   The operative legal standards for entering new regulations that implement the 1979 Decree were set forth in the district court's 1985 order.   Those legal standards require only that a court apply a fifteen-factor test to determine which plan best

---

[7]In his 1985 opinion entering the 1985 Decree, Judge Enslen states that he appointed a special master only in "an attempt to negotiate, mediate, and settlement of the allocation" because he thought that a stipulated resolution would have been preferable to a "litigated result."  *Michigan*, 12 Indian L. Rep. at 3079–80.  But ultimately, Judge Enslen relied on the court's independent authority as a "court of equity" to enter the 1985 Decree over Bay Mills's objections.  *Id.* at 3088.

[8]The events giving rise to the 1979 Decree, a court-ordered decree stemming from the parties' disagreements over tribal fishing rights, prove the point.  The district court entered the 1979 Decree precisely because the parties were unable to reach agreement on the scope of tribal fishing rights in the ceded waters of the 1836 Treaty, much less whether the Tribes had reserved a right to fish in the ceded water at all.  *See Michigan*, 471 F. Supp. at 218.  The originating 1979 Decree itself is not a product of unanimous consent.

protects treaty rights and preserves the fishery resource.  *Michigan*, 12 Indian L. Rep. at 3081.
The need for unanimous consent does not appear anywhere in the 1985 order nor does such a
requirement appear in any other court order.  Under the law of the case, although consensus
among the parties is preferable, a court may enter new fishing regulations over a party's
objections because the overriding priority is protecting the treaty right for all five tribes and
preserving the fishery resource for all parties.[9]  *Michigan*, 12 Indian L. Rep. at 3079.  To the
extent the Coalition also argues that the district court abused its discretion in approving the 2023
Decree under the incorrect legal standards, the district court correctly applied *Michigan*,
12 Indian L. Rep. at 3081, by placing the burden on the Stipulating Parties to show that the
decree protected the Tribes' treaty-reserved rights and preserved the fishery resource before
approving the 2023 Decree.  *Michigan*, 2023 WL 5444315, at *6.  Applying the law of the case,
the district court did not abuse its discretion and properly exercised its continuing jurisdiction
and inherent equitable power—just as it had done in 1982, 1983, and 1985—to approve the 2023
Decree.[10]

B.

The Sault Tribe argues that the district court improperly entered the 2023 Decree without
requiring the Stipulating Parties to satisfy the legal standards for injunctive relief.  To begin, the
court need not reach the merits of this issue because the Sault Tribe forfeited this argument by
failing to make it before the district court.  *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000,
1011 (6th Cir. 2022) ("[A] party has forfeited an argument when the party belatedly asserts it on
appeal after having failed to raise it in the district court.").  But even overlooking forfeiture, the
argument lacks merit.

---

[9]We decline to grant Grand Traverse's separate request for declaratory judgment stating that the zonal
approach to state-tribal allocation of the fishery resource is the law of the case.  Because Grand Traverse did not
seek declaratory relief in the district court on this issue, this request is procedurally improper and may not be
considered on appeal.  *See* 28 U.S.C. § 2201 (requiring "the filing of an appropriate pleading").

[10]Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should
continue to govern the same issues in subsequent stages in the same case."  *Arizona v. California*, 460 U.S. 605, 618
(1983), *decision supplemented*, 466 U.S. 144 (1984).  We do not disturb the law of the case because the Sault Tribe
has not shown that any of the exceptions to the doctrine apply.  *See, e.g.*, *Lac Vieux Desert Band of Lake Superior
Chippewa Indians v. Mich. Gaming Control Bd.*, 276 F.3d 876, 879 (6th Cir. 2002).

The cases to which the Sault Tribe cites does not support its argument that the district court needed to apply the injunctive relief factors. According to the Sault Tribe, because a *consent* decree has an "injunctive quality" and "the prospective provisions of a consent decree operate as an injunction," CA6 R. 30, Appellant Br., at 21 (citing *Vanguards of Cleveland*, 23 F.3d at 1018), the Stipulating Parties failed to meet the required injunction standards and the district court failed to apply those standards to enter the 2023 Decree. As discussed, the 2023 Decree is not a "consent decree" and may be imposed over a party's objections. *See supra* Section III(A).

Even if we assume that the 2023 Decree were a consent decree, Sault Tribe's principal case on this point, *Vanguards of Cleveland*, itself lends no support to its argument. There, we noted that although a consent decree "operates" as an injunction, "courts retain the inherent power to enforce agreements" when actions are brought alleging a party's failure to comply with a decree. *Vanguards of Cleveland*, 23 F.3d at 1018 (citations omitted). The court only referred to "injunctions" in relation to its continuing power to enforce consent decrees and its ability to issue injunctions as a vehicle for enforcing consent decrees. *See id.* ("[I]t is well-settled that 'courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.'" (citations omitted)).

The crux of our holding in *Vanguards of Cleveland* addressed the altogether unrelated standards for modifying consent decrees in the context of extending a preexisting consent decree. *See id.* In that context, we affirmed the district court's approval of an extension based, in part, on the court's "inherent power to modify a consent decree to effectuate the purposes of the decree." *Id.* at 1022; *see also Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1145–46 (6th Cir. 1997) (recognizing the "injunctive quality" of a decree in relation to the court's obligation to modify a decree in response to "changed circumstances" (citation omitted)). We applied the standards under *Heath v. De Courcy*, 888 F.2d 1105 (6th Cir. 1989) and *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992) for the *modification* of a preexisting consent decree. *Vanguards of Cleveland*, 23 F.3d at 1018–19. Thus, contrary to the Sault Tribe's assertions, we did not apply the traditional standards for injunctive relief nor did we ever suggest that those standards would apply to the *entry* of consent decrees. *See id.* at 1018–20. *Vanguards*

*of Cleveland* only discusses the "injunctive quality" of decrees in relation to the standards for modifying a decree. We did not require courts to apply the injunction factors before entering a decree. *See id.*

The Sault Tribe's reliance on *Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) fares no better. In *Williams*, we also noted the "injunctive quality" of consent decrees to support the court's continuing jurisdiction over the decree and its power to enforce the decree with its contempt powers and modify it based on changed circumstances. 720 F.2d at 920. In a separate discussion concerning the procedure for approving consent decrees, we set out a three-step procedure in which the court (i) preliminarily approves the decree based on whether the compromise is "illegal or tainted with collusion," (ii) confirms that notice is provided to all affected parties, and (iii) conducts a reasonableness hearing to decide whether the decree is "fair, adequate and reasonable." *Id.* at 920–21. None of these three procedural steps bears any resemblance to the traditional four-part test for injunctive relief. In sum, despite its attempt to stylize the district court's entry of 2023 as a permanent injunction, the Sault Tribe's argument that the district court needed to apply injunction factors is unsupported.

The law of the case does not support the Sault Tribe's argument either. This case has a robust history in which the court has continually relied on its continuing jurisdiction and inherent equitable power to allocate treaty resources, without having to apply the injunction factors. For instance, in 1981, the district court imposed the lapsed federal regulations as the interim rules on gill net fishing without applying the injunction factors. *See Michigan*, 653 F.2d at 279. Although the district court applied the injunction factors in its 1982 order granting the Tribes' motion to implement the intertribal regulations proposed by the Chippewa-Ottawa Treaty Fishery Management Authority, *see Michigan*, 534 F. Supp. at 669, it did so because, in that context, the Tribes specifically moved to implement the new regulations through an application for injunctive relief. But the district court clarified that, although submitted as an application for injunctive relief, "the better approach is to treat [the] motion as a modification of a previous order" instead because the court has "continuing responsibility over its decrees" and recognizes that "modifications must be made where the facts or circumstances have changed." *Id.* at 669–

70.  The district court was not required to apply the injunction factors to enter the 2023 Decree.
*See id.*

If any doubt concerning the 1982 order remains, the district court's 1984 order is unequivocal.  As the district court stated in its 1984 order granting the Tribe's motion to allocate, "[a] court may grant declaratory relief even though it chooses not to issue an injunction or mandamus. . . . [a] declaratory relief judgment can then be issued as a predicate to further relief, including an injunction."  DE 2080-1, Order, Page ID 12891 (quoting *Powell v. McCormack*, 395 US 486, 499 (1969)).  According to the district court in 1984, the court need not issue an injunction for it to enter a decree.  *See id.* ("[T]he Court never issued an injunction in aid of its declaratory decree[] because the Plaintiffs felt it was unnecessary.").

The district court's entry of the 1985 Decree provides further confirmation.  The district court entered the 1985 Decree without addressing any of the injunction factors.  *See Michigan*, 12 Indian L. Rep. 3079 (W.D. Mich. 1985).  Instead, the district court followed the well-trodden path of relying on its continuing jurisdiction and inherent equitable power to allocate the fishery resource in manner that respects the Tribes' treaty-protected fishing rights and the preservation of the resource.  *See id.* at 3081, 3089.  Consistent with the law of the case, the entry of a decree is not a permanent injunction, and it has never been treated as such in the history of this case.[11] The district court did not abuse its discretion by entering the 2023 Decree without applying the injunction factors.

---

[11]In fact, this is the position that the Sault Tribe itself held when Bay Mills objected to the entry of the 1985 Decree.  When Bay Mills objected to the entry of the 1985 Decree, the Sault Tribe argued before the district court that the proposed 1985 Decree "provides fully and adequately for the exercise of the fishing right, and that it should be imposed upon Bay Mills Indian Community because it protects the fishing right, it gives them a full opportunity to fish, not because they previously agreed and consented to it."  DE 881, Trial Tr. Vol. III, Page ID 27474.

The Sault Tribe's position is inconsistent in two respects: (i) it now demands unanimous consent among the parties before a decree's entry and (ii) it argues that the permanent injunction factors apply even though it made no reference to the injunction factors in 1985 when Bay Mills was the objecting party.  *See id.*  Although we decline to invoke the equitable doctrine of judicial estoppel to preclude the Sault Tribe from now arguing a contrary position, the law of the case controls.

## C.

The Sault Tribe argues that the district court erred because it failed to hold a trial to resolve its objections before entering the 2023 Decree.  This argument is unpersuasive.  In cases involving consent decrees, an intervening party that does not consent to the entry of a decree "is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree." *Firefighters*, 478 U.S. at 529.  Our court clarified that this does not "create a broad right of intervenors to a quasi-trial, but rather simply require[s] a district court conducting a fairness hearing to allow a party to a proposed settlement agreement to present evidence and have its objections heard." *Tenn. Ass'n of Health Maint. Orgs., Inc.*, 262 F.3d at 567 (internal quotations marks and citation omitted).  Nevertheless, the Supreme Court has stated that, in cases involving consent decrees, a court "cannot dispose of the valid claims of nonconsenting intervenors" when "the parties' settlement would also affect the intervenor's claims," *Texas v. New Mexico*, 144 S. Ct. 1756, 1765 (2024) (citation omitted).

As discussed, the 2023 Decree is not a *consent* decree; it is a judicial decree imposed pursuant to its decades long continuing jurisdiction and inherent equitable power.  As a result, it does not require unanimous consent.  *See Michigan*, 12 Indian L. Rep. at 3086 (stating that the 1985 Decree is "not a majoritarian finding, by any means").  Rather, it is a judicial decree that the district court may enter pursuant to its decades long continuing jurisdiction and inherent equitable power.  *See supra* Section III(A).  Therefore, the case law involving consent decrees lack binding effect.  The law of the case controls.

Our court, and the district court, have not required the parties to hold a full trial on fishery allocation, even when a party does not consent to a proposed set of regulations.  We should not now impose such a requirement.  The district court's 1985 opinion adopting the 1985 Decree establishes the applicable procedure in determining whether to approve a proposed decree.  Under the law of the case, the court may adopt a proposed decree over a party's objections so long as an objecting party is provided the opportunity to file objections, present evidence, and argue those objections in an oral hearing.  *See Michigan*, 12 Indian L. Rep. at 3080.

In 1985, when Bay Mills objected to the 1985 Decree and proposed a different allocation, the district court conducted an oral hearing to determine which plan would best protect the treaty rights and conserve the fishery resource, but it did not conduct a full trial. *Michigan*, 12 Indian L. Rep. at 3080.  During a pretrial conference in May 1985, counsels for the parties agreed that a hearing was sufficient and that a full trial was not necessary. *Id.*  The court determined that a full trial would not be necessary because it was only deciding whether to adopt a proposed set of regulations, obviating the need for a litigated resolution. *See id.*  After holding oral argument and reviewing the parties' briefing, proposed findings of law and fact, and submitted evidence, the district court found that "the evidence overwhelmingly supports the conclusion that the [1985 Decree] is superior." *Id.* at 3088.  Because the court decided the allocation issue by adopting the 1985 Decree under the applicable standards, all remaining issues were "mooted." *Id.* at 3089. Having concluded that the 1985 Decree both protects the treaty rights and preserves the fishery resource, the district court concluded it was unnecessary to schedule a trial to further litigate Bay Mills's objections. *See id* at 3088–89.  Given that the district court concluded the same with respect to the 2023 Decree, the same result should apply.  The district court did not have to schedule a trial to further litigate the Sault Tribe's objections.

Like Bay Mills in 1985, the Sault Tribe was afforded the same opportunity to file formal objections, argue its objections in oral hearings, and present findings of fact and conclusions of law.  The Sault Tribe participated in each stage of the process.  The Sault Tribe filed objections to the proposed 2023 Decree, argued its objections in a two-day oral hearing, and filed proposed findings of fact and conclusions of law.  In addition, at the end of the May 2023 objections hearing, the district court invited the parties to expand the record with additional expert testimony on the issues of harvest limits, mortality rates, proposed gillnet use expansion, and gillnet bycatch.  The court left it to the parties to decide whether they would "want to come back to court for live testimony." DE 2120, Hr'g Tr., Page ID 14818–20.  But none of the parties requested expansion of the record.  As the district court noted, "the Sault Tribe did not accept the Court's invitation to schedule an evidentiary hearing with expert testimony." DE 2114, Order Denying Sault Tribe's Mot. for Pretrial Conference, Page ID 14377.  Accordingly, the district court determined that "issuing a case management order scheduling a trial is unnecessary and would be overly burdensome to the parties." *Id.*

In sum, the district court permitted the Sault Tribe to file formal objections, argue its objections in oral hearings, and present findings of fact and conclusions of law.  The Sault Tribe seized this opportunity and received the due process to which it was entitled.  The Sault Tribe is not entitled to delay the district court's adoption of the 2023 Decree by demanding a full evidentiary proceeding.  *Cf. United States v. Oregon*, 913 F.2d 576, 582 (9th Cir. 1990) (holding that objecting party to a proposed decree, who is provided the opportunity to "air its objections," is not entitled to a full evidentiary trial); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("The growing rule is that the trial court may limit its proceeding to whatever is necessary to aid it in reaching an informed, just and reasoned decision.").  The district court did not abuse its discretion when it determined that it could enter the 2023 Decree without having to hold a full trial on the Sault Tribe's objections.

### D.

The Sault Tribe argues that the district court abused its discretion by entering the 2023 Decree because the 2023 Decree (i) fails to further the objective of the law on which the United States's initial complaint is based, and (ii) does not remedy a violation of federal law and thereby deprives the parties of their sovereign legislative and executive powers.  Both arguments are unavailing.

### 1.

A federal court decree must "further the objectives of the law upon which the [initial] complaint was based."  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004).  Contrary to the Sault Tribe's assertion, the 2023 Decree directly furthers the objectives of the 1836 Treaty by enabling the Tribes to exercise their treaty rights more fully through a system of cooperative management between the other tribes, the State, and the United States.  In 1973, the United States brought this suit to protect the Tribe's right to fish in the Great Lakes under the 1836 Treaty.  *Michigan*, 471 F. Supp. at 203.  In its complaint, the United States sought a declaratory judgment from the court confirming the Tribes' treaty-protected rights under the 1836 Treaty and that the State lacks a right to regulate treaty fishing.  The United States also sought injunctive relief enjoining the State from unilaterally enforcing its fishing regulations against the Tribes in

violation of the 1836 Treaty.  The 2023 Decree furthers the objectives of the 1836 Treaty for three key reasons.

*First*, the 2023 Decree avoids the kind of unilateral state regulation that this suit was initially brought to enjoin.  The State plays no role with respect to how each Tribe implements the 2023 Decree; each individual Tribe determines for themselves how to implement it.

*Second*, the 2023 Decree protects the Tribes' fishing rights by establishing geographical zones for its exclusive use.  It carves out twelve different fishing zones across Lake Michigan, Lake Huron, and Lake Superior for the Tribes' use and specifically excludes all forms of state commercial fishing in those twelve zones.  The 2023 Decree states that "State-licensed or -permitted Commercial Fishing shall be prohibited in all 1836 Treaty Waters," apart from a few geographical units (referred to as "Grids") and the 50-mile radii of Marquette, Munising, Muskegon, Ludington, and Leland.[12]  DE 2132, 2023 Decree, Page ID 15244–57.

*Third*, in those areas that are shared between the State and the Tribes, the 2023 Decree generally reserves a substantially greater share of the total annual harvest in Whitefish and Lake Trout—the two primary commercial species harvested in the Great Lakes—for the Tribes than for the State.  The 2023 Decree furthers the objectives of the 1836 Treaty.

2.

The Sault Tribe also alleges that the 2023 Decree cannot be entered because it does not remedy a violation of federal law given that the Tribes themselves are "not engaged in any violation of . . . federal law," thereby depriving the Tribes of their sovereign legislative and executive powers.  CA6 R. 30, Sault Tribe's Br., at 36–37.  Federal decrees must relate to and "further the objectives of the law upon which the [initial] complaint was based."  *Frew*, 540 U.S. at 437.  We have concluded that the 2023 Decree satisfies this threshold requirement because it furthers the objectives of the 1836 Treaty.  But by also suggesting that the underlying violation of federal law must flow from the Sault Tribe's conduct, the Sault Tribe misapplies the law.

---

[12]As for the Sault Tribe, the 2023 Decree provides the Sault Tribe a dedicated zone, referred to as the "Sault Tribe Tribal Zone," for its exclusive use during a period of the year.  DE 2132, 2023 Decree, Page ID 15255–56; DE 2133, Appendix C, Page ID 15356.  The Sault Tribe then shares the zone with another Tribe for the rest of the year.

To begin, the case on which the Sault Tribe relies, *Horne v. Flores*, 557 U.S. 443 (2009), is inapplicable.  *Horne* discusses whether a decree remedies a violation of federal law in the context of whether the district court applied the proper analysis when considering a party's motion under Federal Rules of Civil Procedure Rule 60(b)(5).  *See Horne*, 557 U.S. at 470.  We outlined the procedure for making a Rule 60(b) motion:

> Where a party seeks to make a motion under Fed. R. Civ. P. 60(b) to vacate the judgment of a district court, after notice of appeal has been filed, the proper procedure is for that party to file the motion in the district court.  If the district judge believes there should be relief from the judgment, the district court is to indicate that it would grant the motion.  The appellant should then make a motion in this court for a remand of the case so that the district court can grant relief. Fed. R. Civ. P. 60(b).

*Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 359 n.1 (6th Cir. 2001) (citation omitted). The Sault Tribe did not file a Rule 60(b) motion in the district court.  To the extent that the Sault Tribe requests that the court conduct a similar Rule 60(b)(5) inquiry under *Horne*, we reject this request as procedurally improper.[13]  *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002). But the Sault Tribe's argument is unavailing, even if we broadly construe *Horne* as imposing requirements that extend to a district court's entry of a decree without a Rule 60(b)(5) motion ever having been filed.

In *Horne v. Flores*, a group of English Language Learner ("ELL") students and their parents in the Nogales Unified School District had filed a class action suit alleging that the State of Arizona was violating the Equal Educational Opportunities Act of 1974 (the "EEOA"), which requires Arizona to implement appropriate policies to overcome language barriers that impede students' equal participation in the state's public school education system.  557 U.S. at 439.  The district court in *Horne* entered a declaratory judgment against the State of Arizona finding that it violated the relevant EEOA provisions and, in 2000, approved and entered a consent decree which imposed on the State of Arizona and the school district requirements to evaluate, monitor,

---

[13]The other cases to which the Sault Tribe cites in support of its argument suffer from the same defect: they involve requests to modify a district court's previous order when a party filed a Rule 60(b) motion.  *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992) (addressing Rule 60(b) motion); *John B. v. Emkes*, 710 F.3d 394, 399 (6th Cir. 2013) (same); *United States v. Junction City Sch. Dist.*, 14 F.4th 658, 666 (8th Cir. 2021) (same); *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1183 (10th Cir. 2018) (same).  The Sault Tribe never filed a Rule 60(b) motion.

and implement additional programming for ELL students.  *Flores v. Arizona*, 516 F.3d 1140, 1146 (9th Cir. 2008).  Years later, members of the state legislature intervened and moved for relief from the 2000 consent decree based on "changed circumstances" under Federal Rules of Civil Procedure Rule 60(b)(5).  *Horne*, 557 U.S. at 443.

Applying the standards for relief under Rule 60(b)(5) as prescribed in *Rufo v. Inmates of Suffolk Cnty. Jail*, the court held that relief from a decree is proper when "'a significant change either in factual conditions or in law' renders continued enforcement of the judgment 'detrimental to the public interest.'"  *Id.* at 453.  According to the court, to provide relief under Rule 60(b)(5), a court must conclude that the continued enforcement of a decree is "no longer equitable."  A decree is no longer equitable if the conditions giving rise to the initial violation of federal law no longer exist.  *See id.* at 470 (stating that up-to-date factual findings are "critical to a proper Rule 60(b)(5) analysis . . . as they may establish that [the school district] is no longer in violation of the EEOA").  "If a durable remedy has been implemented, continued enforcement of the order is not only unnecessary, but improper."  *Id.* at 450.  Under *Horne*, the core question is "whether the objective of the [challenged decree] has been achieved."[14]  *Id.*

The objective of the 2023 Decree has not been achieved.  The objective of the 2023 Decree, and the preceding decrees, has been to protect the Tribes' fishing rights given the fundamentally shared nature of the resource.  The conditions that gave rise to State's initial violation of the Tribes' rights under the 1836 Treaty are enduring.  In *Horne*, there was a colorable argument that the decree was no longer needed because the school district could have tried to remove language barriers for students, rendering the decree unnecessary.  557 U.S. at 470.  The decree in *Horne*, if faithfully implemented over time, would eventually cure the federal law violation.  But unlike *Horne*, the problem that prevents the effective realization of the Tribes' fishing rights is a permanent feature that inheres in the nature of the rights themselves.  As the district court observed in 1985, given the shared nature of the rights, the goal of

---

[14]Contrary to the Sault Tribe's assertion, the standards under *Horne* do not require an objecting party to be violating federal law for the court to uphold a decree.  *See Horne*, 557 U.S. at 450 ("[F]ederal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate [federal law] or does not flow from such a violation." (citing *Milliken*, 433 U.S. at 282)).  Instead, "federal-court decrees must directly address and relate to the [federal-law] violation itself" and must be "tailored to cure the condition that offends" federal law. *Milliken*, 433 U.S. at 282.

protecting them is not "susceptible of facile and simplistic resolution." *Michigan*, 12 Indian L. Rep. at 3079.  The district court in 1979 correctly observed that "[t]he fishing right reserved by the Indians in 1836 and at issue in this case is the *communal* property of the tribes . . . it does not belong to individual tribal members." *Michigan*, 471 F. Supp. at 271 (emphasis added).  But the communal nature of these rights has not changed since the district court's opinion in 1979. Moreover, the number of user groups have only increased since 1979.  For this reason, the 2023 Decree has continuing relevance and remains necessary to address the conditions that gave rise to the violation of the Tribes' federal treaty rights.

If left unregulated, tribal fishing in the Great Lakes would become an unchecked, all-against-all race to the bottom, or, in the words of the court in 1985, a "racehorse" fishery. *Michigan*, 12 Indian L. Rep. at 3086.  To avoid a "racehorse" fishery, the 2023 Decree incorporates the same zonal approach, as in the 1985 and 2000 Decrees.  In adopting the 1985 Decree's zonal approach, the district court endorsed it as a key feature that protects the treaty rights and the fishery resource. *Id.* at 3086.  Under the 2023 Decree's zonal approach, competing user groups and different methods of net fishing are separated to reduce social conflict, including conflict with the State.  The 2023 Decree implements a regulatory framework that protects the Tribes' federal treaty rights from the "racehorse" environment in 1973, when the United States first brought suit.  The district court did not abuse its discretion because the 2023 Decree remains appropriately "tailored" to address the original conditions that offended the Tribes' federal treaty rights in 1973. *Milliken v. Bradley*, 433 U.S. 267, 267 (1977).

The Sault Tribe's argument that the 2023 Decree deprives the Tribes' future leaders of their sovereign legislative and executive powers is similarly without merit.  A decree deprives future officials of their designated legislative and executive powers when a decree exceeds "reasonable and necessary implementations of federal law." *See Frew*, 540 U.S. at 441.  The 2023 Decree does not exceed "reasonable and necessary implementations of federal law" because, as discussed, it remains necessary to address the conditions that gave rise to the violation of the Tribes' federal treaty rights.  The Sault Tribe's argument that the Tribe should be able to self-regulate their fishing activities on an individual basis ignores the shared nature of the treaty right.  Given the fundamentally shared nature of the treaty right, it naturally follows that

the Sault Tribe, unlike the *Horne* defendants, cannot implement a correspondingly "durable remedy." *See Horne*, 557 U.S. at 450. As the Sault Tribe acknowledged earlier in this case, the "principal threat to the fishery resource is the absence of allocation." DE 829, Sault Tribe's Pretrial Br., Page ID 23646.

Protecting the Tribes' treaty rights requires cooperation and co-management between the seven sovereign entities. The reality is: "Cooperation is essential for if there is none all will try to exploit the resource at the expense of the others." *Michigan*, 12 Indian L. Rep. at 3086. The district court did not abuse its discretion by entering the 2023 Decree because it remains tailored to further the objectives of the law upon which the initial complaint was based: to ensure that the Tribes' treaty rights to a scarce natural resource would remain protected. *See Rufo*, 502 U.S. at 389.

E.

The Sault Tribe argues that the district court abused its discretion by extending the 2000 Decree because: (i) the court failed to apply the requisite standard to extend the decree, (ii) the court failed to hold an evidentiary hearing to make required factual findings, (iii) extending the 2000 Decree improperly rewrites the bargain that the parties struck, (iv) the Sault Tribe did not consent to the 2000 Decree's extension, and (v) the 2000 Decree fails to remedy a violation of federal law. These arguments are moot.

We may only adjudicate live cases or controversies. U.S. Const. art. III, § 2. We may not "give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citation omitted). "The test for mootness 'is whether the relief sought would, if granted, make a difference to the legal interests of the parties.'" *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (citation omitted). This court cannot grant effective relief to the Sault Tribe.

The Sault Tribe's appeal of the district court's seventh extension of the 2000 Decree is moot because the 2000 Decree is no longer in effect. The district court extended the 2000 Decree to protect the fishery resource and to avoid a regulatory gap during the interim period

before the parties filed their proposed successor decree.  The district court's extension order states that it extends the 2000 Decree "until all objections to [the 2023 Decree] have been adjudicated."  DE 2027, Order Extending the 2000 Decree, Page ID 12022.  After the district court issued this order, the parties, except for the Sault Tribe, filed a stipulation for the entry of the 2023 Decree.  The district court then established a briefing schedule to address the Sault Tribes objections to the proposed 2023 Decree.  In August 2023, the district court adjudicated all objections to the 2023 Decree and entered the 2023 Decree.  *Michigan*, 2023 WL 5444315, at *70.  After the district court adjudicated all objections to the 2023 Decree, under the district court's extension order, the 2000 Decree "no longer govern[ed] the parties in any manner."  DE 1458, 2000 Decree, Page ID 3335.  The 2000 Decree is no longer in effect.

Because we cannot now retrospectively prevent the district from extending the 2000 Decree when it is now no longer in effect, we are unable to provide any effective relief.  Granting the Sault Tribe's requested relief by concluding that the 2000 Consent Decree is now expired, is redundant, and would not affect the Sault Tribe's legal interests.  *Roe v. Snyder*, 2018 WL 8343834, at *1 (6th Cir. Dec. 10, 2018) (holding that the "dissolution" of court's previous order "renders the appeal moot").  Because the extension order has not been in effect since the district court's August 2023 decision, there is no "live controversy."  *Camreta v. Greene*, 563 U.S. 692, 711 (2011); *see also* 28 U.S.C. § 2201 (requiring "a case of actual controversy" before a court can issue declaratory relief).

Although the cessation of challenged conduct cannot moot a case when that conduct is "capable of repetition, yet evading review," *Kingdomware Tech., Inc. v. United States*, 579 U.S. 162, 170 (2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)), the 2000 Decree is unlikely to be extended again.  The district court has already entered the 2023 Decree, and it is effective for twenty-four years following its entry.  Because we see no "reasonable possibility" that the district court will extend the 2000 Decree again, the Sault Tribe's argument related to the district court's seventh extension of the 2000 Decree is moot.  *See Ohio v. EPA*, 969 F.3d 306, 310 (6th Cir. 2020).

IV.

Given the dynamic nature of the resource and the competing interests among numerous user groups, we recognize that protecting the Tribes' treaty-protected fishing rights is not "susceptible of facile and simplistic resolution." *Michigan*, 12 Indian L. Rep. at 3079. For this reason, we have adopted a set of operative legal standards for the entry of new regulations that implement the 1979 Decree, as set forth in the district court's 1985 order, and requires a court to apply a fifteen-factor test to determine whether a proposed decree protects treaty rights and preserves the fishery resource. *Michigan*, 12 Indian L. Rep. at 3081.

We conclude that the lack of unanimous consent does not preclude the district court from entering new fishing regulations. Although consensus among the parties is preferable, the overriding priority is protecting the treaty right for all five tribes and preserving the fishery resource for all parties. Based on the fifteen-factor test, the district court concluded that "the approval and entry of the Proposed Decree is in the best interest of the fishery, the Parties, and the *amici*." *Michigan*, 2023 WL 5444315, at *1. The district court did not abuse its discretion in exercising its continuing jurisdiction and inherent equitable power—just as it had done in 1982, 1983, and 1985—to enter the 2023 Decree over the Sault Tribe's objections.

Accordingly, we affirm the district court's order adopting the 2023 Decree. We also dismiss as moot the Sault Tribe's appeal of the district court's order extending the 2000 Decree.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-1931

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

BAY MILLS INDIAN COMMUNITY; GRAND TRAVERSE
BAND OF OTTAWA AND CHIPPEWA INDIANS; LITTLE
RIVER BAND OF OTTAWA INDIANS; LITTLE
TRAVERSE BAY BANDS OF ODAWA INDIANS,

     Intervenor Plaintiffs - Appellees,

SAULT STE. MARIE TRIBE OF CHIPPEWA INDIANS,

     Intervenor Plaintiff - Appellant,

     v.

STATE OF MICHIGAN, and its agents,

     Defendants - Appellees.

> **FILED**
> Mar 13, 2025
> KELLY L. STEPHENS, Clerk

Before:  GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Marquette.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's entry of the 2023 Decree is AFFIRMED.  IT IS FURTHER ORDERED that the Sault Tribe's appeal of the district court's order extending the 2000 Decree is DISMISSED.

**ENTERED BY ORDER OF THE COURT**

*Kelly L. Stephens*

_____
Kelly L. Stephens, Clerk